UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PROMUS HOTELS, INC. | CIVIL ACTION NO. 04-2454-A |
| -vs- | JUDGE DRELL |
| HADNOT HOTEL PROPERTIES, L.L.C. | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court are the following motions: Motion to Dismiss Counterclaim filed by Defendants Heights Hospitality Corporation, Edwin W. Leslie, individually and as trustee of the Leslie Family Trust, and Thomas F. Noons (collectively the ABAPA Defendants@[1]) pursuant to Rule 12(b)(6) (Doc. 31); Motion to Dismiss Counterclaim filed by Plaintiff Promus Hotels, Inc. (APromus@) pursuant to Rule 12(b)(6) (Doc. 36); and Motion for Judicial Notice of Documents filed by Promus (Doc. 37). Promus opposes the BAPA Defendants= Motion to Dismiss Counterclaim (Doc. 34) and the BAPA Defendants oppose Promus=Motion to Dismiss Counterclaim (Doc. 42). After reviewing the pleadings and the applicable law, each of these motions will be DENIED.

---

[1] Heights Hospitality Corporation, Edwin W. Leslie, individually and as trustee of the Leslie Family Trust, and Thomas F. Noons are referred to as the ABAPA Defendants@ because they formed the British American Properties of Alexandria, L.L.C.

Background

Promus operates a network of hotels under various service marks, including ☒Hampton Inn.☒ (Doc. 1). Pursuant to a License Agreement (☒Agreement☒) dated January 20, 1997, Promus granted Defendant Hadnot Hotel Properties, L.L.C. (☒Hadnot☒) the right to use the Hampton Inn service mark in connection with a hotel (☒the Hotel☒) owned by Hadnot in Alexandria, Louisiana. (Doc. 1). Promus, the licensor, could terminate the Agreement in the event of default, including if management of the Hotel was transferred or if Hadnot lost possession or the right to possession via a sale and/or transfer of ownership of the Hotel or the real property underlying the Hotel. (Doc. 1). Likewise, the Agreement allowed Promus to terminate the Agreement if Hadnot proposed a transfer of the Hotel or any interest Hadnot had in the Hotel to a transferee whose application to own and/or operate the Hotel was not approved by Promus. (Doc. 1).

During the latter part of 2003, the BAPA Defendants began negotiations to purchase the underlying property and the Hotel from Hadnot. (Doc. 12). To execute the sale, the BAPA Defendants and Hadnot requested that Promus grant a transfer of the Hampton Inn license to a newly formed entity, British American Properties of Alexandria, L.L.C. (☒British American☒). (Doc. 12). The entity would operate the property under the Hampton Inn service mark. (Doc. 12).

In November 2003 Hadnot also requested permission to transfer the Hampton Inn license to Hadnot Enterprises, L.L.C. ("Hadnot Enterprises"). (Doc. 1). Promus claims that in March 2004 it informed Hadnot that transferring the license to Hadnot Enterprises would trigger the Agreement's change of control provision and that Promus would process the transfer subject to the satisfaction of certain conditions contained in the Conditional Consent Letter Agreement. (Doc. 1).

On March 23, 2004, Promus forwarded an Assignment and Assumption of, and Amendment to, License Agreement and an Application for Franchise License to the BAPA Defendants to facilitate the BAPA Defendants' continued use of the name "Hampton Inn" and associated marks. (Doc. 12). Promus also required the BAPA Defendants to execute a Guarantee of Franchise License Agreement ("Guarantee") prior to Promus' granting its authorization to assign the Agreement. (Doc. 12). The BAPA Defendants executed the Guarantee on March 24, 2004. (Doc. 12).

On March 24, 2004, prior to finalizing the Conditional Consent Letter Agreement to transfer the License, Hadnot advised Promus that the real property on which the Hotel was located had been sold to British American, allegedly without Promus' consent and in violation of the Agreement. (Doc. 1). On March 25, 2004 Promus informed Hadnot that any previously proposed transfer of the license to Hadnot Enterprises was null and void because of the sale of the real

3

property to British American. (Doc. 1). As discussed above, Promus provided Hadnot with conditions that had to be met before Promus would consent to the ownership transfer to Hadnot Enterprises and the transfer of the license to the BAPA Defendants. (Doc. 1). Promus, claiming these conditions were never satisfied, filed suit against Hadnot on December 3, 2004.

In its Answer, Hadnot also assumed the position of a third party plaintiff, making the BAPA Defendants third party defendants. (Doc. 8). Hadnot makes the following allegations as a third party plaintiff: (1) on March 24, 2004, Hadnot Enterprises entered into an Indemnity Agreement with the BAPA Defendants; (2) the Indemnity Agreement provided that Heights Hospitality Corporation, one of the BAPA Defendants, accepted all obligations and liabilities arising under the Agreement, including the costs and expenses associated with Promus approving the transfer of the Agreement; (3) the BAPA Defendants agreed to hold harmless and indemnify Hadnot from any and all liabilities arising under the Agreement or from the transfer or termination of the Agreement; and (4) the Indemnity Agreement provides that the BAPA Defendants are liable for and will hold harmless and indemnify Hadnot from liability for liquidated damages that might be assessed as a result of the Agreement. (Doc. 19).

In their answer, the BAPA Defendants brought cross-claims[2] against Promus for detrimental reliance and negligent misrepresentation. (Doc. 12). Promus then asserted a counterclaim against the BAPA Defendants. (Doc. 26). Therein Promus claimed that if Hadnot is liable to Promus, then the BAPA Defendants would be liable, jointly and *in solido*, to Promus, pursuant to the Indemnity Agreement between the BAPA Defendants and Hadnot, for any amounts that may be found due to Promus. (Doc. 26).

Law and Analysis

I.   Motions to Dismiss

Rule 12(b)(6) allows a party to request that the Court dismiss an action on the grounds that the Plaintiff failed "to state a claim upon which relief can be granted." A Rule 12(b)(6) motion is viewed with disfavor by the law and is rarely granted. Priester v. Lowndes County, 354 F.3d 414, 419 (5th Cir. 2004).[3]

To avoid dismissal on a 12(b)(6) motion, the plaintiff must have pled specific facts, not mere conclusory allegations. Tuchman v. DSC Communications

---

[2] Although the BAPA Defendants style their claims against Promus as "counterclaims," the claims are actually cross-claims. However, the terminology used to refer to the claims is immaterial to the Court's analysis and ruling.

[3] Promus correctly argues that dismissal on 12(b)(6) grounds is generally disfavored (Doc. No. 34). However, Promus incorrectly asserts that, as a result of this disfavor, the Court should allow the non-moving party to amend its pleadings. The general rule does not require a court to allow the plaintiff to amend. Rather, the general rule is that a *pro se* party should be given every reasonable opportunity to amend. Pena v. U.S., 157 F.3d 984, 987 n. 3 (5th Cir. 1998). Since Promus is not pro se, this rule does not apply.

5

Corp., 14 F.3d 1061, 1067 (5th Cir. 1994). With these facts, the plaintiff is required to Aallege all of the elements of a right to recover against a defendant.@ Id. The Court will construe the facts in a well-pleaded complaint in the plaintiff=s favor and these facts are taken to be true. Priester, 354 F.3d at 419. The Court also considers all reasonable inferences from the well-pled complaint. Tuchman, 14 F.3d at 1067. The Court does not accept as true any conclusory allegations or unwarranted deductions. Id.

Therefore, a court will not dismiss a plaintiff=s claim unless Athe plaintiff will not be entitled to relief under any set of facts or any possible theory that [plaintiff] could prove consistent with the allegations of his complaint.@ Priester, 354 F.3d at 419. The question the Court must consider when ruling on a Rule 12(b)(6) motion is: Awhether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.@ Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999).

### A. Motion to Dismiss filed by the BAPA Defendants

The BAPA Defendants seek to dismiss Promus= counterclaims. (Doc. 31). The BAPA Defendants maintain that Promus cannot enforce the Indemnity Agreement against them because there is no privity of contract between Promus and the BAPA Defendants: Promus is not a party to the agreement, does not claim to be a party to the agreement and has not been assigned the right to enforce the agreement. (Doc. 31). The BAPA Defendants maintain that only

Hadnot, a party to the agreement, may attempt to enforce its terms and provisions. (Doc. 31). Promus responds that Louisiana does not require a party to be in privity of contract for it to enforce an agreement. Promus asserts it is a third party beneficiary of the Indemnity Agreement and it is therefore legally entitled to enforce it. (Doc. 34).

In Louisiana, a contract intended to benefit a third party is referred to as a "stipulation pour autrui." "Louisiana law is settled that for there to be a stipulation *pour autrui* there must be not only a third-party advantage, but the benefit derived from the contract by the third party may not merely be incidental to the contract." Kane Enterprises v. MacGregor (USA) Inc., 322 F.3d 371, 375 (5th Cir. 2003)(citations omitted). A stipulation pour autrui is found only when "the contract *clearly* contemplates the benefit to the third person as its condition or consideration . . . . The contract need not expressly identify the third person, however, if the contract plainly contemplates a benefit to a third person." Id. The party seeking to enforce the contract must be an intended third party rather than an incidental one. Davis Oil Co. v. TS, Inc., 145 F.3d 305 (5th Cir. 1998).

The Indemnity Agreement clearly contemplates the BAPA Defendants assuming financial obligations that the Hadnot Defendants legally owed to Promus. The following paragraphs from the Indemnity Agreement show that the BAPA Defendants actually may have undertaken some or all of the obligations that the Hadnot Defendants owed Promus:

7

> 1.1 Heights Hospitality Corporation and British American Properties, Alexandria, LLC . . . accept the Franchise Agreement and all obligations and liabilities that arise under the Franchise Agreement.
> 1.2 All costs and expenses imposed by Hilton for the approval process [to transfer the Franchise Agreement] to be paid by [the BAPA Defendants]
> 1.3 [The BAPA Defendants] hereby agree to indemnify and hold [the Hadnot Defendants] harmless from any liability arising from the transfer or attempted transfer of the Franchise Agreement and/or the termination of the Franchise Agreement.
> 1.4 [The BAPA Defendants] hereby further agree to pay on behalf of or reimburse [the Hadnot Defendants] any and all fees, costs, penalties and/or damages, including any liquidated damages, particularly the liquidated damages set forth in . . . the Franchise Agreement, incurred in connection with the transfer or attempted transfer of the Franchise Agreement and/or termination of the Franchise Agreement.

Several other paragraphs contain similar language, indicating that the BAPA Defendants may have agreed to undertake financial obligations the Hadnot Defendants owed to Promus or might owe to Promus in the future. Through these provisions, Promus has alleged sufficient facts to show that they may be a third party beneficiary of the Indemnity Agreement and capable of enforcing the agreement against the BAPA Defendants. Because Promus= cross-claim sufficiently states a valid claim for relief as to satisfy Rule 12(b)(6), the BAPA Defendants= Motion to Dismiss must be denied.

### B. Motion to Dismiss Counterclaim filed by Plaintiff Promus Hotels, Inc.

Promus filed its answer to the BAPA Defendants= cross-claim on February 17, 2006. (Doc. 33). Promus then moved to dismiss the BAPA Defendants= claims pursuant to Rule 12(b)(6) on April 18, 2006. (Doc. 36). Rule 12(b) provides: A[a]

motion making any [Rule 12(b)] defenses shall be made *before* pleading if a further pleading is permitted@ (emphasis added).  Because Promus filed its answer prior to filing its Motion to Dismiss, the Motion to Dismiss is not timely and, therefore, must be DENIED.

II.     Motion for Judicial Notice

Finally, Promus filed a Motion for Judicial Notice of Documents.  (Doc. 37).  The record does not show any opposition to this motion. Promus attempts judicial notice of the following documents: the Hampton Inn License Agreement; a financial spreadsheet; several pieces of correspondence; an unexecuted AAssignment and Assumption of, and Amendment to, License Agreement@; the Indemnity Agreement and the Cash Sale Agreement between Hadnot and the BAPA Defendants.  Promus offers these documents in relation to its Motion to Dismiss the BAPA Defendants= cross-claims.

As a general rule, a court may not rely on documents outside of the pleadings when ruling on a motion to dismiss.  Lovelace v. Software Spectrum Inc., 78 F.3d 1015 (5th Cir. 1996).  However, courts may take judicial notice of official public records, such as documents filed in another judicial proceeding or before the Security and Exchange Commission.  Patterson v. Mobile Oil Corp., 335 F.3d 476 (5th Cir. 2003); R2 Investments LDC v. Phillips, 401 F.3d 638 (5th Cir. 2005).  A Ajudicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court

9

or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.@ Scanlan v. Texas A&M Univ., 343 F.3d 533 (5th Cir. 2003).

The Court did not find any Fifth Circuit cases in which a court took judicial notice of agreements, contracts or letters between private parties as Promus is currently asking the Court to do. Likewise, Promus did not provide the Court with any Fifth Circuit authority to support its Motion. The proffered documents are neither generally known within the Western District of Louisiana nor are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Because judicial notice is not appropriately applied to the types of documents for which Promus requests judicial notice, Promus=Motion will be DENIED.

Conclusion

For the reasons stated above, the Motion to Dismiss Counterclaim filed by the BAPA Defendants pursuant to Rule 12(b)(6) will be DENIED; the Motion to Dismiss Counterclaim filed by Promus pursuant to Rule 12(b)(6) will be DENIED and the Motion for Judicial Notice of Documents filed by Promus will be DENIED.

SIGNED on this 24th day of August, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge

10